ADDISON P. COOK v. GEORGE W. ROUNDS, CHARLES J. JAQUA, AND OTHERS.

*Land contract—Mortgage—Condition construed—Payment—Failure of title to land sold—Abandonment of claim by vendor, how shown—Payment of taxes, as evidence of claim of title—Adverse possession—Statute of limitations.*

The vendees in a land contract, secured, by mortgage on other lands, the payment of a portion of the contract price to the vendor, who, up to the time of the maturity of the mortgage debt, was active and prompt in the collection or attempted collection of the principal and interest, but for twenty-one years prior to commencing a foreclosure suit made no demand of further payment.

At about the date of the last payment, an adverse claimant to the *contracted* land forbade the vendees cutting any timber or doing any work thereon, under threats of prosecution, and took possession of other lands belonging to the vendor, under a like claim of title. The vendees notified their vendor of this adverse claim, and requested him to protect them under *his* title; and his agent wrote him to the same effect, and also that the adverse claimant, and parties claiming under him, were cutting timber on other lands owned by the vendor. No responses were received to these letters, except a direction to the agent to institute legal proceedings against the parties, to which the agent responded by asking for money to defray the expenses of the proposed suits, but received no further answer.

Thereupon one of the vendees surrendered possession of the land, and the other, with another party, purchased it from the adverse claimant, received a deed therefor, and under the title thus acquired their grantees had been in adverse possession up to the time of the commencement of this foreclosure suit. The vendor paid the taxes on the land, with other parcels, up to 1875, with the exception of three years, but by no other act asserted any claim to the premises up to the time of commencing this suit.

*Held*, in a suit brought to foreclose said mortgage in which its payment, the failure of title in the vendor, and an adverse possession

for more than twenty years were set up as matters of defense, that under the proofs such defense is fully made out, and the decree below dismissing the bill is a just and proper one, and is affirmed.

*Held*, further, that the payment of taxes in the manner stated cannot be regarded as such an assertion of ownership as to affect, in any way, the adverse possession of the defendants, or to weaken the force of the other acts of the vendor evidencing an actual abandonment of his claim to the land.

Appeal from Kent. (Montgomery, J.) Argued February 2, 1886. Decided April 8, 1886.

Complainant appeals from decree dismissing bill. Affirmed. The facts are stated in the opinion and head note.

*Norris & Uhl*, for complainant :

The statute of limitations does not apply to the case at bar. The contract, the mortgage, and the tax receipts are securities for the same debt ; and, taken together, bring the transaction down to the time of commencing suit. Prior to Act No. 204, Pub. Acts of 1879, p. 186, the equitable bar on the expiration of twenty years arose upon the presumption of payment, and that might be removed by evidence : *Abbott v. Godfroy's Heirs*, 1 Mich. 179 ; *The Mich. Ins. Co. v. Brown*, 11 Mich. 272 ; and it is conceded that five installments have not been paid.

Where the mortgagor and those succeeding to his rights continue in possession, no length of time will bar either redemption or foreclosure : Ang. Lim. (6 ed.) p. 473, § 462 ; *Greeno v. Munson*, 31 Am. Dec. 605. The suit was commenced within five years after Act 204 of 1879 took effect.

No adverse possession has been shown ; on the contrary, possession under the contract has been continuous. If it had been shown that some defendants held adversely, it could not have any bearing upon the decree. Adverse possession cannot be litigated in a foreclosure suit : *Summers v. Bromley*, 28 Mich. 127 ; *Wilkinson v. Green*, 34 Mich. 221 ; *Comstock v. Comstock*, 24 Mich. 39. The possession taken under the contract has never been surrendered : *Campau v. Lafferty*, 50 Mich. 118.

Possession of the contract land having been taken by Rounds and Jaqua under the contract, and continued by their successors, they are all estopped from disputing complainant's title : *Clee v. Seaman*, 21 Mich. 297. The stipulation in the

contract on the part of complainant to give a warranty deed was an assertion of his right to the possession, and the agreement on the part of Rounds and Jaqua to surrender possession to the complainant upon default, if he should require it, was an admission of his right to such possession. Complainant's title is not shown to have been defective for any cause. If Winsor had any title, the defendants by buying it up became able to complete the title from complainant, if that should need strengthening; but they cannot be heard to set up such weakness as a defense: *Farmers' & Mechanics' Bank v. Bronson*, 14 Mich. 369; Pomeroy on Cont., p. 423, § 349; compensation is all they could claim for it: *Meadows v. Hopkins*, 33 Am. Dec. 140.

Land contracts as well as title bonds may be foreclosed in equity: Jones Mortg. (2 ed.) §§ 225, 1449; *Fitzhugh v. Maxwell*, 34 Mich. 138.

As to costs given defendants Farr, Briggs, Walling, and Morrison;—those defendants, by answering unnecessarily and by contesting the bill by proofs, should have been decreed to pay costs, even if the decree were correct on the merits. Those defendants should have disclaimed merely: *Comstock v. Comstock*, 24 Mich. 39. The decree should be reversed, and the customary decree of foreclosure made in the cause.

*Birney Hoyt*, for defendant Rounds, and *Frank F. Kutts*, for defendant Jaqua:

The mortgage debt was barred by the statute of limitations before this suit was begun, and equity applies this statute by analogy; *McLean v. Barton*, Harrington Ch. 279; *McKinney v. Miller*, 19 Mich. 151; *Curtis v. Goodenow*, 24 Mich. 22; *Detroit Savings Bank v. Truesdail*, 38 Mich. 439; *Hardy v. Powell*, 40 Mich. 415; *Smith v. Davidson*, Id. 632; *Cooper v. Detroit*, 42 Mich. 590; *German Seminary v. Kiefer*, 43 Mich. 112; *Butler v. Hogadone*, 45 Mich. 390.

Defendants were, early in 1860, driven off the land by an adverse claimant, complainant abandoning the same. Under these circumstances no personal decree can be claimed against them, such claim being barred by the statute of limitations: *Lashbrooks v. Hatheway*, 52 Mich. 129.

If this be a bill for specific performance as to these defendants, the failure of complainant to show in his bill title in himself to the land sold them, and his ability and willingness to perform his contract by executing a deed therefor, is ground for the demurrer contained in the answer. The

delivery of the deed must be simultaneous with the payment of the purchase price: Jennison's Chancery Practice, 636, and cases cited; and the vendor must also put, or offer to put, the purchaser into possession: Daniels Ch. Pr. 637, and cases cited; Pomeroy on Specific Performance of Contracts, pp. 399, 400, and cases cited.

A further ground of demurrer is the failure of complainant to state in his bill the amount due and unpaid upon the mortgage: How. Stat. § 6705; *Bailey v. Gould*, Walker Ch. 478; *Martin v. McReynolds*, 6 Mich. 74.

MORSE, J. The bill of complaint in this cause was filed May 26, 1881, to foreclose a mortgage executed by the defendants George W. and Mary R. Rounds and Charles J. and Laura L. Jaqua, upon two separate parcels of land in Kent county, one being the homestead of George W. Rounds, and the other the homestead of Charles J. Jaqua.

The mortgage was dated December 1, 1856, and was given to secure the payment of $325.05, and a stipulated amount of interest, being the first three annual payments, of $108.35 each, upon a certain land contract, bearing date the same day, wherein complainant agreed to sell and convey to said Rounds and Jaqua another parcel of land in the same county, for the sum of $758.44.

The bill also asks for a foreclosure of said contract, claiming, at the date of the filing of his bill, that there was then due upon said contract and mortgage the sum of $1,500.

The defendants Rounds and Jaqua in their answer admit the execution of the contract and mortgage, but claim that they paid the mortgage according to its terms. They admit going into possession of the premises described in the contract, but claim that, after being in such possession about three years, they were dispossessed of said lands by one Jacob W. Winsor, who had the legal title thereto; that they believe the complainant had no title to said lands; and that although the said Winsor and his grantees have held and occupied said premises adversely to said complainant for more than twenty years, he has never, by himself or any one else, demanded possession of, or asserted any right in, said lands.

They also set up the statute of limitations, and add a demurrer clause for want of equity.

The defendants Farr, Dean, Briggs, Walling, and Morrison, answer, in substance, that they are strangers to the mortgage and contract; that if the same were ever made they are without consideration and void; deny that they are subsequent purchasers or incumbrancers, or that they or their grantors went into possession under Rounds or Jaqua, or under the land contract. They also set up title in themselves, derived from the state, and possession thereunder for twenty years, as a bar, and also demur the same as the others.

The circuit court, in chancery, upon pleadings and proofs, dismissed the complainant's bill, decreeing that the mortgage had been fully paid and satisfied; and that as to the land described in the contract, the defendants Rounds and Jaqua had no title or interest, at the time of the filing of the bill, in the land contract or the premises; and that the other defendants had no title or possession to the land by virtue of or under said contract, but their possession of the premises was and had been adverse to complainant. The complainant appeals from this decree.

The first dispute arises upon the terms of the mortgage; or, rather, the true construction of its condition. The defendants claim that the mortgage, by its terms, calls for the payment of the first three installments of the land contract, with the interest upon the whole amount of principal unpaid at the date of the falling due of each of said three installments. The complainant claims that the mortgage not only secured these payments, but the interest upon the whole unpaid principal of the land contract, as long as any part of said principal remained unpaid.

The condition of the mortgage reads as follows:

" That if the said parties of the first part pay to the said party of the second part the sum of three hundred and twenty-five dollars and five cents, in three annual payments of one hundred and eight dollars and thirty-five cents, with interest payable annually upon seven hundred and fifty-eight dollars and forty-four cents, according to a certain land contract, bearing even date herewith, executed by George W.

Rounds and Charles J. Jaqua to the said party of the second part as collateral security, then these presents shall cease and be null and void; but in case of non-payment of the said sum of three hundred and twenty-five dollars and five cents, or the interest thereof, or any part thereof, at the time, in the manner, and at the place above limited and specified for the payment thereof, then," etc.

We think the claim of the defendants the correct interpretation.

The parties have also put a practical construction upon this clause. As will be seen hereafter, payments of principal and interest were made up to about the time defendants claim the whole amount due and owing upon this mortgage was satisfied, according to their view of the meaning of the interest clause. After that, no further payment was offered or made by Rounds and Jaqua, and none was demanded by complainant.

The defendants Rounds and Jaqua claim that they paid the mortgage in full some time in the year 1860; that the first payment was made December 2, 1857, being $152.60 in cash, leaving a balance due of $8.84, which was, by agreement, to stand over until next payment. This is admitted by complainant, and the same was indorsed by him upon the contract. The second payment is claimed by defendants to have been made in 1858, by the cutting and hauling of logs from lands of complainant to a mill, at two dollars per thousand, and the payment of the saw-bill at complainant's request. This is denied by complainant. Without going into detail as to the evidence, the proofs amply sustain this claim of defendants.

As to the third payment, defendant Jaqua swears that he went to the village of Brooklyn, Jackson county, in this State, where complainant then lived and now resides, and paid him, January 3, 1860, the sum of $76.23 in cash, leaving a balance due of $71.38, to be paid in three months by the cutting and hauling of another lot of logs, which balance was subsequently paid by such work. This is denied by complainant. There is an indorsement upon the contract, made of the date of January 3, 1860, now reading as follows:

"$76.23. Rec'd third January, 1860, seventy-six 23-100 dollars on second payment, leaving balance of $71.38 to be on interest at 10 per cent., for three months." This indorsement is in the handwriting of complainant, and was made, except the word "second," at the date thereof. It appears, without dispute, that the word "third" was erased by an indelible pencil mark, and the word "second" written over it by the same pencil, since the commencement of this suit, either by the complainant or some one in his behalf.

The claim of defendants as to this third payment seems to be supported by the proofs; but, above all, it is sustained by the conduct of the complainant since that time. He testifies that he has never seen either Rounds or Jaqua since the date of said payment, nor has he ever in any way demanded of them any payment upon said mortgage. For over twenty-one years he has slumbered upon the rights he claims to hold in this mortgage and contract, and made no sign. Previous to this payment in 1860 he was prompt and active in the collection, or attempted collection, of the payments and interest as they came due. His silence since gives confirmation to the claim of defendants that the mortgage has long been paid and satisfied.

In regard to the land contract, it seems, without any serious controversy, that, about the time the last payment was made upon the mortgage, Jacob W. Winsor, claiming to own the land, forbade the defendants cutting any timber or doing any work upon the premises, under threats of prosecution. He also took possession of other lands belonging to complainant.

Defendants Rounds and Jaqua wrote to complainant, setting forth Winsor's claim and threats, and requesting him to defend and protect them under his title. His agent, one Thornton, also wrote him to the same effect, and stating, further, that Winsor, and parties claiming under him, were cutting timber upon other lands claimed by complainant. To these letters no responses were obtained, except a direction to Thornton to go to Grand Rapids and employ the best lawyer there, and prosecute the intruders for trespass. To

this Thornton replied that it took money to employ counsel, and he must send some. To this letter no answer was ever received.

Believing that complainant had abandoned his claim of title to the land, the defendant Rounds, who was in possession, gave up the premises, and defendant Jaqua and one Carmer purchased and received a deed of the same land from Winsor; and under the title so acquired their grantees have ever since been in actual occupancy of the premises, claiming adversely to complainant.

The testimony also shows that no demand of possession, or claim of right to the land, has ever been made by the complainant, or by any one in his behalf, until the commencement of this suit. The defendants now holding said premises have, by themselves and through their grantors, been in the actual, exclusive, adverse possession of the land described in the contract for more than twenty years continuously previous to the filing of complainant's bill.

It is, indeed, true that he paid the taxes on this land up to 1875, save for the years 1866, 1872, and 1874; but the record shows that these taxes were paid, as evidenced by the receipts, with other lands in the same vicinity; and the mere payment of taxes cannot be regarded as such an assertion of ownership as to affect, in any way, the adverse possession of the defendants, or to weaken to any extent the evident force of all his other acts and conduct looking towards an actual abandonment of his claim. Since the last payment upon the mortgage and contract, no communications whatever have passed between the parties. He has made no effort to collect principal or interest upon either mortgage or contract, although he has been in the neighborhood of the premises, engaged in lumbering. He saw the timber upon other lands he claimed to hold by the same title as he did the contract land, cut and carried away by Winsor and others, claiming adversely to him, and made no effort to prevent it or to assert his rights.

He has shown in this case no title to the premises described in the contract, except the fact of his contracting to sell it

to the defendants Rounds and Jaqua; and, as far as we know, there is no evidence that he ever held any title whatsoever to the premises upon which he seeks a performance of the land contract.

We therefore, under the proofs, must hold the decree of the circuit court for the county of Kent, in chancery, dismissing his bill of complaint, to be a just and proper one; and the same is affirmed, with costs of both courts.

The other Justices concurred.