## ADDISON P. COOK v. THOMAS J. HOPKINS.

[See 60 Mich. 310.]

*Ejectment—Land contract—Statute of limitations—Adverse posses-sion.*

1. In this case the questions of *fact* submitted to the jury, and found in favor of the defendant, were passed upon in *Cook v. Rounds*, 60 Mich. 310, with a like result, and cannot now be held to have been improperly submitted to the jury.
2. A land contract giving, if fulfilled, an estate in *fee-simple*, can never expire by its own limitations except by forfeiture for breach of condition, and the vendor has no right of entry for any *other* reason.
3. An action of ejectment by the vendor in a land contract giving, if fulfilled, an estate in *fee-simple*, brought more than 20 years after default in the last payment stipulated for therein, during which time there has been an *adverse* possession, is barred by the statute of limitations.

Error to Kent. (Montgomery, J.) Argued October 14, 1887. Decided March 2, 1888.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Norris & Norris,* for appellant.

*Taggart & Denison,* for defendant.

CAMPBELL, J. Plaintiff brought ejectment to recover certain lands in Kent county, which plaintiff acquired through a government title in 1854, and which defendant claims under a holding which can only be sustained under the statute of limitations. Plaintiff claims under a mortgage foreclosure, which appears to us to have been valid, and the other questions are the only ones requiring attention.

There is no doubt that defendant and his grantors have held long enough to bar any right of entry, unless prevented from holding adversely by the relations between plaintiff and his own predecessors in title. This is what plaintiff claims to have been the fact.

In December, 1856, plaintiff made a contract to sell the land to George W. Rounds and Charles J. Jaqua for a consideration of $758.44, payable in seven annual installments of $108.35, with annual interest on all unpaid. They were to take subject to all future taxes, and to confine their cutting to the east half of the lot until the fifth installment should be paid, which would be due in 1861. On failure to perform any condition, plaintiff was to be at liberty to consider himself relieved from all covenants and obligations, and his vendees were to forfeit all payments made, and all improvements, and all their interest in the land, and deliver up immediate possession.

The vendees made all their payments which became due up to 1860, and were not in default, therefore, until December, 1860. They did not make the payment then due. But earlier in that year the testimony indicates that one Jacob Winzor, who held a tax title existing prior to their purchase, demanded that they should surrender possession to him. The vendees, as the jury have found, thereupon attempted to abandon their purchase from Cook, and left the land. One of the disputed points was whether Cook was notified of that abandonment, and of their intention no longer to hold under him. While George W. Rounds and Jaqua were holding under Cook, they allowed one Joseph Rounds and Matilda, his wife, to occupy a log-house on the premises. It is claimed as a fact, on which there was evidence, that, upon Winzor's claim being made, Cook's vendees notified Cook of his claim, and desired him to protect them in their title, and that he paid no attention to them. When they abandoned the land it is further claimed that they notified Joseph

Rounds that they could not allow him to stay longer under them, and that he attorned to Winzor, and became his tenant.  In December, 1860, Winzor conveyed his title to Jaqua and William Carmer, who took possession, and Joseph Rounds became their tenant, and paid them rent, George W. Rounds having no further concern.  In January, 1869, Carmer and Jaqua conveyed to Matilda Rounds, Joseph having died, and there has been continuous possession in her and her grantees, defendant now holding that claim.  The tax title was invalid as a title.

The court below held that George W. Rounds and Jaqua could not so disclaim previous to December, 1860, as to give Cook any right of entry against them until that time.  This suit was brought more than 20 years after default was made in the last payment, in December, 1863.  But it was held below that until Cook received notice or became informed that they repudiated his title, or held against it, their holding was subordinate to his, and the statute did not begin to run.  Defendant in this case relies not only on the verdict, as establishing a complete defense under the ruling, but upon the further ground that under the undisputed facts the right of entry was barred when suit was begun.

The inquiry, therefore, is within narrow limits.

The defendant, upon the defense referred to in the charge, relies on notice given by Rounds and Jaqua to two persons named Hill and Thornton, who were claimed to have acted as Cook's agents, and who were also shown to have written to Cook.  The court left it to the jury to determine whether the testimony satisfied them of Cook's knowledge.  It seems to us that there was enough to go to the jury on that subject, and they have found against him.  As we held in a former suit of *Cook v. Rounds*, 60 Mich. 310 (27 N. W. Rep. 517), that in our opinion, passing on substantially the same facts, the defense was made out, we cannot now hold that the jury could not pass upon them; and their determination must

settle the case, unless plaintiff's counsel are right in another claim, which is not very clearly shown to have been laid before the circuit court, but which is not foreign to the issue.

It does not seem to be seriously doubted that, in ordinary cases, a right of entry must be enforced within the period of limitations; but it is claimed there are some cases where, by reason of some special privity, a person who has been in possession under a certain title cannot dispute it until he puts his landlord back, or at least makes, or attempts to make, a surrender. This view was laid before the jury. But counsel now claim that the privity cannot be determined, whether by disclaimer or in any other way, until the special estate has been completely determined. To sustain this view reference is had to section 8700 of Howell's Statutes, declaring when a right of entry shall be deemed to have accrued in order to set the statute in motion. This section is divided into five heads.

The fifth subdivision declares that, in cases not provided for, the right of entry shall be deemed to have accrued when the claimant or person under whom he claims first acquired the title sued on.

The remainder refers to cases exceptional to this. The first fixes it at the time when one is disseized. That in the present case would be when Winzor entered in 1860. The second declares that an heir or devisee shall be deemed to have the right of entry at the death of the ancestor or testator, unless there is some estate or terms intervening after the death, in which case it is postponed till the intermediate estate terminates. The third, which is the clause relied on here, is to the effect that in case of such intermediate estate, and in all cases where the party claims in remainder or reversion, his right shall accrue when such intermediate or precedent estate would have expired by its own limitation, although he might have entered for forfeiture earlier. But the fourth subdivision declares that the third clause shall not prevent

any one from entering when entitled to do so by any forfeiture or breach of condition; but if he claims under such a title, his right shall be deemed to have accrued when the forfeiture was incurred or the condition broken.

The contract in question was not for a term of years, but a contract which gave, if fulfilled, an estate in fee-simple. It could never expire by its own limitations except by forfeiture for the breach of condition, and plaintiff has no right of entry for any other reason. This being so, if the contract can be treated as creating an intermediate estate at all, it must come under the fourth subdivision. This would place the right of entry in December, 1860, or at latest in December, 1863, when all the obligation had matured. We do not see how it could be postponed beyond December, 1860, without some waiver or agreement. But it is not very important, because this suit was not begun until 1884, more than twenty years after December, 1863; and, if so, then none of the questions discussed on the other facts or rulings are material, as there is nothing in the case which could save the suit on any theory.

The circumstances of the original change of possession were peculiar, and gave room for claiming all that was claimed before the jury. But we could not review their finding of facts, if it were material. As it is. however, no facts disputed could change the result.

The case has been well and ingeniously argued, and we have reserved our decision to become satisfied; but we can see nothing that could justify any different result.

The judgment must be affirmed.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred.